UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

—————————————

UNITED STATES OF AMERICA,

        Plaintiff,

        v.                                 No. 2:17-cr-02141-WJ

MATTHEW RAY VALENZUELA,

        Defendant.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S *PRO SE*
MOTIONS FOR APPOINTMENT OF COUNSEL AND COMPASSIONATE RELEASE
AND DENYING MR. ALMANZA'S MOTION FOR APPOINTMENT OF COUNSEL**

THIS MATTER comes before the Court upon Defendant's *pro se* motion for appointment

of counsel, filed October 15, 2020 (**Doc. 36**), Defendant's *pro se* motion to reduce sentence under

18 U.S.C. § 3582 and First Step Act of 2018, filed October 15, 2020 (**Doc. 37**), and Steven L.

Almanza's motion to appoint CJA counsel, filed October 23, 2020 (**Doc. 39**). The Court, having

reviewed these motions and the applicable law, finds the motions listed above are not well-taken.

Therefore, the Court DENIES Defendant's motions for appointment of counsel and compassionate

release and DENIES Mr. Almanza's motion to appoint CJA counsel.

**BACKGROUND**

In 2017, Defendant pleaded guilty to five counts relating to methamphetamine trafficking.

Doc. 35. He was sentenced to total term of 120 months imprisonment followed by four years under

supervised release. *Id.* Defendant, a 42-year-old inmate at FCI Big Springs, a facility operated by

the Federal Bureau of Prisons ("BOP"), filed a motion for compassionate release and home

detention, accompanied by a motion to appoint counsel for his request, on October 15, 2020. Docs.

36 & 37. The essence of Defendant's request is that a reduction in his sentence is warranted due to the COVID-19 pandemic and its interactions with his general health and living conditions at FCI Big Springs. On October 23, 2020, Mr. Almanza, Defendant's CJA counsel in the underlying case, requested that the Court re-appoint him to assist Defendant in seeking compassionate release. Doc. 39.

## DISCUSSION

### I.       Defendant's Motion for Compassionate Release

"Generally, a federal court may not modify a term of imprisonment once imposed." *United States v. Wilson*, 493 F. App'x 919, 921 (10th Cir. 2012) (citing *Dillon v. United States*, 130 S. Ct. 2683, 2687 (2010)).  However, Congress has provided a limited exception to this general rule and allowed for certain "compassionate release" sentence modifications under 18 U.S.C. § 3582(c)(1)(A). To justify the type compassionate release that Defendant seeks, the Court must find that "extraordinary and compelling reasons warrant such a reduction." *Id.* That said, a district court may not consider a request for compassionate release unless and until the prisoner has exhausted all administrative remedies. *See* § 3582(c)(1); *see also United States v. Read-Forbes*, No. CR 12-20099-01-KHV, 2020 WL 1888856, at *3 (D. Kan. Apr. 16, 2020) (discussing administrative exhaustion as a jurisdictional requirement). As the movant, Defendant bears the burden to establish that he is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

A.  Defendant's Assertion that He Met the Exhaustion Requirement is not Dispositive

Before the First Step Act of 2018, Pub. Law 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018) was enacted, only the Bureau of Prisons ("BOP") could seek compassionate release. As amended, § 3582(c)(1)(A)(i), now permits courts to consider motions filed by the defendant if "the defendant

has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" Defendant asserts that he made two requests for compassionate release. On September 17, 2020 he sent a letter to his warden requesting compassionate release pursuant to 18 U.S.C. § 3582(c)(1). Doc. 37 at 21-23. Defendant made follow up request on September 24, 2020, which his fiancée emailed to the BOP. *Id.* at 24. Defendant states that he received no response from the warden, and more than 30 days have passed, thus allowing him to bring his own motion before the Court.[1]

The Court gives Defendant the benefit of the doubt here on the exhaustion issue.  Because the warden failed to respond to Defendant's September 17th compassionate release request within 30 days, the Court will proceed to consider Defendant's *pro se* motion on the issue. Defendant's satisfaction of his exhaustion requirements is merely the start of the inquiry. If the exhaustion requirement is met, a court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i).  The Sentencing Commission's relevant policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that:

(i) "extraordinary and compelling reasons warrant the reduction;"

(ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and

---

[1]     Mr. Almanza informs the Court that, while Defendant filed his motion 28 days after his warden request, he personally confirmed that the warden did not respond to Defendant within 30 days. Doc. 39 at 2 n.2. Therefore, the Court will consider the issue ripe.

(iii) "the reduction is consistent with this policy statement."

USSG § 1B1.13. Applying this standard, the Court concludes that it must deny Defendant's

motion for compassionate release for the reasons discussed below.

B.   Extraordinary and Compelling Reasons Do Not Exist

Even construed liberally, as *pro se* pleadings must be, there is nothing in Defendant's

motion that would allow the Court to find "extraordinary and compelling reasons" warranting a

reduction in sentence. The "extraordinary and compelling reasons" standard may be met based on

a defendant's medical condition, which in relevant part, can include the following categories:[2]

(1) a defendant who is "suffering from a terminal illness";

(2) a defendant who is suffering from a serious physical or medical condition;

(3) a defendant who is suffering from a serious functional or cognitive impairment; or

(4) a defendant who is experiencing deteriorating physical or mental health because of the
aging process;

. . . that substantially diminishes the ability of the defendant to provide self-care within the
environment of a correctional facility and from which he or she is not expected to recover.

If a defendant's medical condition does not fall within one of the categories, the Court must

deny his motion. Defendant's primary concern relates to his recovery from COVID-19. He states

that he tested positive for the virus on September 1, 2020 and was moved into quarantine on

September 5, 2020. Doc. 37 at 17. Defendant claims that during quarantine he was confined to his

bed, he lost weight, and he often felt short of breath. *Id.* These issues increased his anxiety, leading

to panic attacks. *Id.* Defendant, although recovered from COVID-19, still fears unknown long-term

---

[2]       *See* USSG § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics
that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances
which are not pertinent here. USSG § 1B1.13, cmt. n.1(B)-(C). Finally, the note recognizes the possibility that BOP
could identify other grounds that amount to "extraordinary and compelling reasons." USSG § 1B1.13, cmt. n.1(D).

consequences that may interact with his other medical impairments, which include Hepatitis C, GERD, PTSD, and tooth infections. Doc. 37 at 5.

The Court is not unsympathetic to Defendant's health conditions, nor ignorant of the fact that the coronavirus has struck the prison population hard. However, the Defendant gives the Court no reason to find that his chronic health conditions (i.e., ones from which the defendant is not expected to recover) would "substantially diminish the ability… to provide self-care within the environment of a correctional facility." USSG § 1B1.13, cmt. n.1(A)(ii)(I). Defendant, like many in this country and across the globe, contracted and recovered from COVID-19, an infectious disease caused by a newly discovered coronavirus.[3] Other than describing his fears about potential long-term consequences, Defendant's motion does not alert the Court to any chronic health conditions caused by his COVID-19 infection or its interactions with his other medical impairments.

Defendant also asserts that the COVID-19 pandemic in itself constitutes an "extraordinary and compelling reason" for compassionate release. Doc 37 at 7. While the Court understands that the pandemic has personally affected Defendant, it cannot give credence to this broad assertion, as it goes against the Sentencing Commission's definition of the term "extraordinary and compelling reasons." The Court agrees with the Third Circuit that the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone can independently justify compassionate release. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Additionally, the Court cannot conclude that the presence of COVID-19 at the FCI Big Springs facility, without

---

3       The Court notes that the World Health Organization ("WHO") has stated "most people infected with the COVID-19 virus will experience mild to moderate respiratory illness and recover without requiring special treatment." *See* https://www.who.int/health-topics/coronavirus#tab=tab_1 (last visited Nov. 6, 2020). Older people, and those with underlying medical problems like cardiovascular disease, diabetes, chronic respiratory disease, and cancer are more likely to develop serious illness. *Id.*

more, substantially diminish Defendant's ability to care for himself. Many courts have denied

prisoners' motions for compassionate release even when there are significant numbers of active

COVID-19 cases at their facilities and even when the prisoners themselves test positive for the

virus. *See e.g., United States v. Mekaeil*, 2020 WL 6318693 (D. Kan. Oct. 28, 2020) (finding no

extraordinary and compelling reasons in the absence of individualized showings about defendant's

increased vulnerability after recovering from COVID-19); *United States v. Gheith*, 2020 WL

5850162, at \*5 (E.D. La. Oct. 1, 2020) (finding that a previous COVID-19 infection, without more,

is not an extraordinary or compelling reason); *United States v. Korn*, 2020 WL 1808213, at \*6

(W.D.N.Y. Apr. 9, 2020) (denying compassionate release where defendant suffered from a serious

heart condition and his facility had confirmed cases); *see also* United States v. Gileno, 448 F. Supp.

3d 183, 188 (D. Conn. 2020) ("the Court cannot assume that the  [BOP] will be unable to manage

[an] outbreak.").

The BOP has experience combatting infectious diseases and has developed and

implemented a multi-point plan to battle COVID-19. Preparations began in January 2020 when

the BOP instituted its Pandemic Influenza contingency plan, specifically modified to fight

COVID-19.[4] This plan is based on guidance and directives from the World Health Organization,

the Centers for Disease Control and Prevention, and other related agencies. *Id.* Under this plan,

the BOP has implemented quarantine and isolation protocols, restricted inmate transfers, limited

group gatherings, employed screening procedures, and suspended visitation and tours. *Id.* These

and other measures are constantly reassessed to further mitigate the exposure and spread of

COVID-19 among the federal prison population. *Id.*

---

[4]       *See* "BOP COVID-19 Action Plan," https://www.bop.gov/coronavirus/covid19_status.jsp (last updated Oct. 8, 2020) (last visited Nov. 9, 2020).

Defendant's motion does not provide evidence that the BOP is failing to provide him with adequate medical care under these circumstances. Indeed, Defendant's ongoing receipt of medical care, as demonstrated by his description of testing and quarantine accommodations, as well as the recent medical records attached to his motion, evidences that he is able to care for his symptoms within prison. *See* Doc. 37.[5] Because Defendant is generally healthy and cannot show any medical condition or circumstance that would meet the Sentencing Commission's criteria, the Court cannot identify any "extraordinary and compelling reason" warranting a sentence reduction under § 3582(c)(1)(A).

C.   Community Safety and Other Relevant Considerations

Although it has grounds to deny Defendant's motion due to a lack of "extraordinary and compelling reasons," the Court will still address community safety and other relevant considerations. Under the Sentencing Commission's policy statement, this Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2).

Defendant's underlying conviction is based on his methamphetamine trafficking activities, which were furthered through use of a firearm. Doc. 22. His Presentence Report also reveals a lengthy criminal history, which includes a prior conviction for second-degree murder and several battery charge. *Id.* One charge, ultimately dismissed due to the victim's refusal to testify, stemmed from Defendant stabbing a fellow New Mexico Department of Corrections inmate with a homemade knife. *Id.* Given the conduct underlying Defendant's conviction and his prior crimes of violence, it is doubtful that Defendant would be able to persuade the Court that he would not be a

---

[5]      Since it contains private health information and medical records, access to Defendant's motion for compassionate release is limited to case participants. Doc. 37

danger to the community if he was released—even assuming he was able to show that his medical

condition were serious enough to interfere with his ability to care for himself within the facility.

Defendant asserts that he would not be a danger to the community because his release plan

would involve "confine[ment] in a manner akin to incarceration," as well as "constant supervision

and monitoring." Doc. 37 at 19.  It is unclear whether Defendant is requesting supervised release

or home confinement under the CARES Act.[6] If Defendant is requesting the later, then this Court

has no authority to order the BOP to release Defendant to this type of custody. It is well-settled

law that a prisoner has no constitutional right to confinement in a particular place, including

confinement at home. *See McKune v. Lile*, 536 U.S. 24, 39 (2002). The BOP retains complete

discretion in determining where federal prisoners are housed. *See* 18 U.S.C. § 3621(b); *United*

*States v. Miller*, 594 F.3d 1240, 1242 (10th Cir. 2010) (citing *Moresco v. United States*, No. 92-

1108, 1992 WL 372399, at *2 (10th Cir. Dec. 10, 1992) (unpublished)). 18 U.S.C. § 3624(c)(2)

authorizes the BOP to place certain prisoners in home confinement.  The unambiguous language

of §3624(c)(2), however, as modified by the Coronavirus Aid, Relief, and Economic Security

(CARES) Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281 (2020), specifies that only the

BOP is statutorily authorized to release prisoners to home confinement. *See United States v.*

*Edwards*, No. 17-40093-01-DDC, 2020 WL 2836991, at *1 (D. Kan. June 1, 2020). Defendant's

request would alter only the location of his incarceration, not its term. Accordingly, because the

Court lacks authority to designate the place of a prisoner's incarceration, the Court must deny

Defendant's request for release to home confinement. These considerations, whether examined

---

[6]      Mr. Almanza's motion refers to Defendant's request to his warden for CARES Act early release to home
detention. Defendant's motion before this Court specifically asks for supervised release, albeit supervised release
with incarceration-like confinement and 24-hour monitoring.

together or independently, support the Court's finding that Defendant is not eligible for compassionate release.

## II.      Defendant's and Mr. Almanza's Motions to Appoint Counsel

Defendant has no constitutional right to counsel in pursuing his §3582 motion, although the Court may appoint counsel in its discretion. *See Engberg v. Wyoming*, 265 F.3d 1109, 1121–22 (10th Cir.2001); *United States v. Olden*, 296 F. App'x 671, 674 (10th Cir. 2008); *United States v. Robinson*, 542 F.3d 1045, 1052 (5th Cir. 2008).

On August 13, 2020, after receiving numerous *ex parte* and informal requests to appoint counsel for compassionate release motions, the Court entered an Administrative Order establishing the proper procedures for "effectuating the discretionary appointment of counsel and handling compassionate release requests." 20-MC-00004, Doc. 30.  That Order requires, *inter alia*, that the request for appointment of counsel "[s]tate the grounds for an appointment by describing the extraordinary and compelling reasons supporting the requested relief." *Id.*

Mr. Almanza's motion, which briefly references Defendant's recovery from COVID-19, Hepatitis C, GERD, tooth infection, anxiety and PTSD, does not sufficiently describe "extraordinary and compelling reasons supporting the requested relief." The Administrative Order does not govern Defendant's *pro se* request for counsel, but the Court will employ many of the same considerations. Appointing counsel in this case would be fruitless: the Court has found that "extraordinary and compelling reasons" do not exist at this time. Given the nature of this case, the Court has decided to exercise its discretion in denying both motions to appoint counsel.

## CONCLUSION

**THEREFORE,** for the reasons explained above, the Court **DENIES** Defendant's motion

for compassionate release (Doc. 37) and, in an exercise of its sound discretion, **DENIES** both

Defendant's and Mr. Almanza's Motions to Appoint Counsel (Docs. 36 & 39).

**IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE